[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13218
Non-Argument Calendar
_____

D.C. Docket No. 0:15-cr-60050-WJZ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES D. EDOUARD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 12, 2016)

Before HULL, JORDAN and JULIE CARNES, Circuit Judges.

After a jury trial, James Edouard appeals his conviction under 18 U.S.C.

§ 554(a) for knowingly attempting to export firearms to Haiti, contrary to the laws

of the United States, specifically 18 U.S.C. § 922(e).  On appeal, Edouard

challenges the sufficiency of the evidence supporting his conviction.  Edouard

argues that the government failed to prove beyond a reasonable doubt that he had

the required mens rea or that his actions were contrary to any law of the United

States.  After review, we affirm.[1]

A person violates 18 U.S.C. § 554(a) if he "fraudulently or knowingly

exports or sends from the United States, or attempts to export or send from the

United States, any merchandise, article, or object contrary to any law or regulation

of the United States . . . ."  18 U.S.C. § 554(a).  In this case, the law Edouard was

charged with and convicted of violating was 18 U.S.C. § 922(e), which addresses

firearms.  Specifically, § 922(e) makes it a federal crime "knowingly to deliver" to

a common carrier a container in which there is a firearm without providing the

carrier with written notice of the firearm.  18 U.S.C. § 922(e).

Here, the government presented ample evidence from which a reasonable

jury readily could find that Edouard knowingly attempted to export and send

firearms to Haiti contrary to § 922(e) and § 554(a).  Construing the evidence in

favor of the jury's verdict, the government showed that Edouard went to the airport

to take a flight to Haiti and, using the self-service kiosk, attempted to check two

---

[1]"We review de novo the sufficiency of the evidence supporting a conviction, viewing the evidence and drawing all inferences in favor of the verdict."  United States v. Isaacson, 752 F.3d 1291, 1303 (11th Cir. 2014).  We must affirm a jury's verdict "unless there is no reasonable construction of the evidence from which the jury could have found [the defendant] guilty beyond a reasonable doubt."  Id. at 1303-04 (quotation marks omitted).  Because "the jury has exclusive province over" credibility determinations, we will overturn a jury's credibility finding "only in the rare circumstances that the testimony is incredible as a matter of law."  Id. at 1304

bags that contained five new Glock firearms.  The self-service kiosk asks passengers whether their bags contain weapons and, if a passenger answers "yes," the kiosk does not permit the passenger to complete the self-service check in process.  Instead, the kiosk directs the passenger to an agent to complete necessary forms.[2]  If the passenger answers "no," the kiosk allows the passenger to check the bag and get a boarding pass.

Edouard checked one bag using the kiosk.  When his other bag was overweight, Edouard spoke with Maria Velasquez, an airport employee who oversaw the self-service kiosks, and asked her for a first-class upgrade.  Velasquez confirmed with Maria Tejada, an American Airlines customer service representative at the check-in counter, that an upgrade was available.  Velasquez then took Edouard to Tejada at the check-in counter.  Tejada processed Edouard's upgrade without speaking directly to him.

Both Velasquez and Tejada testified that Edouard never informed them of the firearms in his bags even though a sign posted at the check-in counter warned passengers that they must declare firearms they were transporting or face civil penalties.  In addition, signs throughout the terminal also advised passengers that

---

[2]The agent provides the passenger with a form declaring that the passenger is carrying a firearm, which the passenger signs, and the form must be placed in the passenger's bag next to the firearm.  A copy of the American Airlines form was introduced at trial.

3

they must declare firearms in checked baggage.  The government introduced pictures of the signs at trial.

When Edouard's bags were screened by Transportation Safety Administration employees, they triggered alarms and were searched.  TSA employees found one firearm in one bag and two firearms in another bag.  A U.S. Customs and Border Protection ("CBP") agent took possession of the bags, met Edouard at the check-in counter, and questioned him about the firearms to determine whether the firearms were for export or for personal use and whether they had been properly presented to CBP for export.  Edouard told the CBP agent that he was carrying three firearms, a Glock 17, a Glock 19, and a Glock 23.  The CBP agent examined the three firearms, which appeared to be in new condition, and pointed out that they were two Glock 17s and a Glock 19.  Edouard then said that he must have packed the wrong firearms.  The CBP agent examined the bags and found two more firearms, a Glock 19 and a Glock 23, for a total of five firearms.  The CBP agent also ran an initial check and confirmed that Edouard was not licensed to export firearms to Haiti.

In a subsequent interview with Special Agent Peter Alles with the Bureau of Alcohol, Tobacco, Firearms and Explosives, Edouard indicated he was traveling to Haiti on business.  Edouard admitted to Agent Alles that he was carrying three firearms he had recently purchased and that he did not fill out the declaration forms

because he was running late.  Edouard also admitted that in 2010 he had traveled to Haiti with a firearm and had notified customs officials and the airline about the firearm and filled out the necessary paperwork.  Further examination of Edouard's bags revealed five printed transfer-of-ownership documents corresponding to the five Glock firearms found in his bags, with the date and the transferees' names left blank.  Agent Alles later confirmed that Edouard purchased the five firearms from three different firearms dealers in the two weeks leading up to his scheduled flight.

At trial, Edouard testified that he told Velasquez about the firearms in his bags while he was talking to her about his overweight bag and asking for an upgrade.  Although Edouard said he did not see the warning sign at the check-in counter, he admitted that he knew he needed to declare the firearms and complete the declaration forms, having filled them out for his 2010 trip.  In fact, Edouard admitted that he had completed all the forms necessary to travel with firearms to Haiti at least four times in the past.  For this trip, however, Edouard assumed Tejada had handled the forms electronically because he observed her typing extensively after she and Velasquez spoke to each other in Spanish and then she told him everything was fine and placed his bags on the conveyor belt.  Edouard said that his wife packed his bags and included two extra guns that he had not intended to take.  Edouard claimed that he was not trying to smuggle the firearms into Haiti to sell them, but rather that he was bringing one of the firearms as his

personal weapon in Haiti and two other firearms for employees of his security firm in Haiti.

The forgoing evidence amply supports the jury's findings that Edouard knowingly attempted to export the firearms to Haiti contrary to § 922(e)'s notice requirements. Indeed, Edouard admitted knowing that he delivered the firearms in his bags to American Airlines for transport to Haiti without providing written notification. The evidence also shows that Edouard knew his conduct was "contrary to" U.S. law or regulations, given his previous experience declaring firearms and the posted signs at the airport. While Edouard testified that he declared the firearms verbally to Velasquez, which he thought was sufficient, the jury clearly did not believe him, and instead believed Velasquez and Tejada, a choice that was within the jury's discretion. See United States v. Jiminez, 564 F.3d 1280, 1285 (11th Cir. 2009) (explaining that this Court will assume that the jury answered credibility questions in a manner that supports the jury's verdict). Edouard has given us no reason to disturb the jury's credibility findings. See United States v. Thompson, 422 F.3d 1285, 1291 (11th Cir. 2005) (explaining that for testimony to be incredible as a matter of law it must be unbelievable on its face).

Moreover, Edouard's discredited testimony supports his conviction. Although Edouard said he told Velasquez about the firearms and denied attempting

to export and sell the firearms or knowing that his conduct was unlawful, the jury was free to reject Edouard's testimony, infer the opposite was true, and consider that discredited testimony, in combination with other corroborative evidence, as substantive evidence of Edouard's guilt. See Jiminez, 564 F.3d at 1985.

Finally, on appeal Edouard argues that to sustain a § 544(a) conviction, the government had to prove not only that he knowingly attempted to export the firearms, but that he did so knowing his conduct was "contrary to" U.S. law or regulations. The government, on the other hand, contends that it had to prove only that Edouard knowingly delivered the firearms to a common carrier without giving notice the firearms were in the bags, not that he did so willfully or with the specific intent to violate § 922(e)'s notice requirement. This Court has not addressed the precise mens rea required for a § 544(a) offense. We need not resolve this issue here because, even assuming arguendo that Edouard is correct, the government presented evidence from which the jury reasonably could find that Edouard knew giving his bags to American Airlines without disclosing the firearms inside was "contrary to" U.S. law or regulations. Edouard's primary defense at trial was that he told Velasquez about his firearms, not that he was unaware of the requirement to disclose them.[3]

**AFFIRMED.**

---

[3]Edouard does not appeal his 63-month sentence.